UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CLEON TAYLOR,  :
                Plaintiff, : **OPINION AND ORDER**
                  :
v. : 16 CV 8814 (VB)
                  :
C.O. SCOTT, C.O. HAYDEN, C.O. ROSIER, :
DEP. O'NEILL, CAPTAIN MELVILLE, and :
C.O. CHRISTINE GIESS, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Cleon Taylor, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants C.O. Scott, C.O. Rosier, Deputy O'Neill, Captain Melville, and C.O. Giess violated his rights under the Eighth Amendment.

      Now pending is defendants' unopposed motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #29).

      For the reasons set forth below, defendants' motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

      At all relevant times, plaintiff was incarcerated at Green Haven Correctional Facility.

      At 6:30 a.m. on September 15, 2014, plaintiff asked C.O. Rosier for a plunger because plaintiff's toilet was clogged with human waste. C.O. Rosier responded that the facility was on lockdown for a facility-wide search. C.O. Rosier passed plaintiff's cell six or seven times

1

throughout the day. Plaintiff requested the plunger each time but Rosier never provided the plunger to plaintiff.

At 11:30 a.m. on September 15, 2014, C.O. Scott came to plaintiff's cell to ask if he needed medication. Plaintiff responded that he did not need medication but he did need a plunger to unclog his toilet. Plaintiff then showed C.O. Scott the clogged toilet, which plaintiff had covered with a towel. C.O. Scott continued his rounds. Plaintiff asked him for the plunger on other occasions that day. At 6:30 p.m., upon returning from the medical clinic, plaintiff again asked C.O. Scott for a plunger "because [his] toilet [wa]s filled with even more feces." (Am. Compl. ¶ 11). C.O. Scott told plaintiff to go to his cell and lock in. Plaintiff did not receive a plunger from C.O. Scott.

At 8:30 a.m. on September 16, 2014, plaintiff stopped C.O. Hayden and asked him for a plunger for the clogged toilet. Two hours later, plaintiff heard C.O. Hayden talking to another inmate two floors below plaintiff's cell. Plaintiff yelled to C.O. Hayden to ask for a plunger, but Hayden did not reply.

At 6:30 p.m. on September 16, 2014, while plaintiff was returning to his cell from the clinic, he saw C.O. Scott. Plaintiff asked him, "Why was I not allowed to use the plunger and could I use it now[?]" (Am. Compl. ¶ 16). C.O. Scott answered that plaintiff could not use the plunger and that "[h]e was ordered by his captain not to give the plunger to any inmates." (Id.).

At 8:00 a.m. on September 17, 2014, plaintiff stopped C.O. Giess, explained to him that he had no flushing toilet for over forty-eight hours, and asked him for a plunger. At 11:30 a.m. C.O. Giess again passed by plaintiff's cell. Plaintiff asked him if he had forgotten about the plunger. C.O. Giess responded that he had not forgotten and that he had told the "A station officer." (Am. Compl. ¶ 18). Plaintiff then asked C.O. Giess if he could go to sick call because

2

he was dizzy and having difficulty breathing. C.O. Giess said he would let the A officer know of the request. Thereafter, around 12:30 p.m., plaintiff told a different corrections officer that he had asked to go to sick call and added that he wanted to speak to a sergeant. The corrections officer denied those requests.

On September 17, 2014, at 7:00 p.m., plaintiff stopped Deputy O'Neill as he was walking by plaintiff's cell. Plaintiff explained to Deputy O'Neill that plaintiff's toilet had been clogged for over forty-eight hours and told him the difficulty he had had trying to get a plunger. Specifically, plaintiff told Deputy O'Neill that C.O. Scott told plaintiff, "[t]he Captain ordered him not to give out the plunger to [any] inmates." (Am. Compl. ¶ 21). Captain Melville was nearby, so Deputy O'Neill asked him whether he had told C.O. Scott not to give out plungers to inmates. Captain Melville said, "No, if any[]thing I would tell the officer[]s to go ahead and give out the plunger to those inmate[]s who need[] it, because the inmates cannot come out of their cell to get it [themselves]." (Id. ¶ 22). Both Deputy O'Neill and Captain Melville assured plaintiff he would receive a plunger.

Plaintiff did not receive a plunger until the following day, September 18, 2014, around 10:30 a.m.

Plaintiff alleges he sustained physical injuries as a result of his exposure to the clogged toilet for seventy-six hours, including a red, sore throat, shortness of breath, abdominal pain, vomiting, and dizziness. Plaintiff was examined by a nurse, but did not receive medical treatment.

**DISCUSSION**

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

3

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

4

II.     The Motion to Dismiss

Defendants argue the failure to provide plaintiff a flushable toilet for seventy-six hours did not pose an unreasonable risk to plaintiff's health such that it was not a violation of his Eighth Amendment rights.

The Court agrees.

The Eighth Amendment requires prison conditions to be at least "humane." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  To adequately allege an Eighth Amendment violation, an inmate must satisfy objective and subjective elements of a two-pronged test: "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety.'"  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (quoting Gaston v. Coughlin, 249 F.3d at 164).

Regarding the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d at 125 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)).  He must allege prison officials deprived him "of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (quoting Rhodes v. Chapman, 452 U.S. at 347).  When a plaintiff seeks to combine individual deprivations, the sum equates a conditions of confinement claim only if the composite conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." Wilson v. Seiter, 501 U.S. 294, 304 (1991) (stating that holding prisoners in cold cells without blankets may constitute a violation).

5

With respect to the subjective requirement:

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d at 185–86 (citation omitted).

In deciding whether exposure to human waste poses an unreasonable risk of serious damage to health under the objective prong, the Court assesses the "severity and duration [of the exposure], on a case-by-case basis." Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (citations omitted). "Serious injury is unequivocally not a necessary element of an Eighth Amendment claim, although the seriousness of the harms suffered . . . may shed light on the severity of an exposure." Id. at 31 (internal quotation marks and citation omitted).

When a prisoner risks physical contact with human waste, through overflow of a toilet or otherwise filthy cell conditions, courts have held durations of as little as ten hours to be unconstitutional when combined with other unsanitary and humiliating conditions. See Darnell v. Pineiro, 849 F.3d at 23–26 (ten-hours in detention facility was unconstitutional where facility had nine alleged constitutional violations including (i) overcrowding, (ii) unusable toilets, (iii) inadequate sanitation, (iv) infestation, (v) lack of toiletries, (vi) inadequate nutrition, (vii) extreme temperatures and poor ventilation, (viii) deprivation of sleep, and (ix) crime and intimidation); Gaston v. Coughlin, 249 F.3d at 165 (2d Cir. 2001) (three days of exposure to feces, urine, and sewage water combined with frigid temperatures and rodent infestation constituted an Eighth Amendment violation). However, brief exposure to physical waste, even when there is direct contact by the prisoner, may not be an Eighth Amendment violation. See

6

Little v. Municipal Corp., 51 F. Supp. 3d 473, 491 (S.D.N.Y. 2015) (collecting cases); Florio v. Canty, 954 F. Supp. 2d 227, 235 (S.D.N.Y. 2013) (same).

In cases in which the prisoner never risked actual contact with human waste, but had to live in close confines with a clogged toilet, the Second Circuit has held five- and seven-day periods of exposure unconstitutional. See Willey v. Kirkpatrick, 801 F.3d 51, 66–67 (2015) (citing LaReau v. MacDougall, 473 F.2d 974 (2d Cir. 1972)).

Here, plaintiff's toilet was clogged for seventy-six hours. This amount of time falls somewhere in between the established thresholds for mere discomfort and the deprivation of basic human needs in violation of the Eighth Amendment.[1]

Undoubtedly, the conditions of plaintiff's confinement were uncomfortable and unfortunate. However, because this was an isolated incident, during which plaintiff was able to, and did, use his toilet (Compl. ¶ 11), and did not substantially risk physical contact with human waste, the Court finds the defendants did not violate plaintiff's Eighth Amendment rights. This is further supported by the absence of any additional exacerbating circumstances, otherwise present in the cases in which shorter periods of time without a usable toilet were held unconstitutional. Lastly, plaintiff suffered only minor physical injuries, underscoring the lesser severity of the exposure.

Because plaintiff has failed to state a conditions of confinement claim under the objective prong, the Court need not address whether defendants acted with deliberate indifference under the subjective prong.

---

[1] Because the duration of exposure to human waste falls in this gray area, defendants would also be entitled to qualified immunity, if the claim were not dismissed, because defendants' actions were not in violation of a clearly established constitutional right. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Accordingly plaintiff's Eighth Amendment claim is dismissed.

III.   Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, plaintiff has been given ample opportunity to defend his complaint or show he has a valid claim. By Order dated February 17, 2017, the Court ordered plaintiff to file an amended complaint to add the identity of a John Doe defendant. (Doc. #9). On March 24, 2017, Plaintiff filed his amended complaint. (Doc. #15). Defendants filed a motion to dismiss the amended complaint on July 19, 2017. (Doc. #29). Plaintiff did not timely respond to defendants' motion. On August 10, 2017, the Court sua sponte granted an extension of time to oppose the motion to September 5, 2017. (Doc. #31). Despite the extension, to date plaintiff has not opposed defendants' motion.

Accordingly, the Court has already given plaintiff a reasonable opportunity to show he has a valid claim, or explain deficiencies in the motion to dismiss, but plaintiff failed to do so.

In addition, even a liberal reading of the amended complaint does not suggest that plaintiff would be able to state a valid claim if given another opportunity to do so. Because the exposure to human waste was limited in severity and duration, any additional amendment would be futile.

Accordingly, the Court declines to grant plaintiff leave to amend.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #29) and close this case.

The Clerk is instructed to mail a copy of this Opinion and Order to plaintiff.

Dated: January 17, 2018
       White Plains, NY

                      SO ORDERED:

                       _____
                       Vincent L. Briccetti
                       United States District Judge